UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

DANIEL & ELEANOR HILTON,

Debtors.

Case No. 08-25440

Chapter 13

---

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION

---

BACKGROUND

The debtors filed a chapter 13 petition on May 20, 2008. At the time of the filing, both debtors were employed and were members of an above-median income household. Up until May 6, 2008, however, Mr. Hilton had also been receiving regular concurrent unemployment income. This was not explained, but it sometimes occurs for a limited time when a person has another part-time job. As a result, the debtors' monthly disposable income, as computed on Form B22C, was $1,156.04, or $867.83 higher than their actual monthly income as of the date of the petition. In an effort to rectify the discrepancy, the debtors proposed a plan by which the disposable monthly income on Line 59 of Form B22C would be reduced by the discontinued average monthly unemployment compensation of $867.83, on Line 8, to $288.21. In exchange for this consideration, the debtors proposed to remit one-half of the net federal and state income tax refunds for each year of the plan as an additional dividend to general unsecured creditors, as is the custom in this district.

The trustee opposed confirmation, arguing the plan does not provide for the required distribution to unsecured creditors under the means test, which is $69,362.40. The parties were given an opportunity to file briefs, and the debtors did so.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

DISCUSSION

Section 1325(b) of the Bankruptcy Code, as amended by the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), provides in relevant part the following:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended ....

11 U.S.C. § 1325(b)(1)-(2). Section 1325(b)(3) incorporates section 707(b)(2)(A) and (B), which sets forth the means test for determining whether a chapter 7 case is presumptively abusive. As set forth above, the Code defines "disposable income," but not "projected disposable income."

In this case we must determine whether the term "projected disposable income" is based solely on a historical perspective of income from Form B22C alone, or whether other evidence may be considered when the debtor experiences a significant change in circumstances reducing income at or around the time of the bankruptcy filing.

Although the majority of the case law involves the expense side of the disposable income equation, various approaches have developed. Several courts have taken a "plain meaning" or

2

"mechanical" approach to the meaning and implementation of section 1325(b)(2). *E.g.*, *In re Frederickson*, 375 B.R. 829 (B.A.P. 8th Cir. 2007) (holding "projected disposable income" of above-median income chapter 13 debtor was simply debtor's disposable income, as calculated on Form B22C, extrapolated over his applicable five-year commitment period); *In re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006) (noting that "[e]liminating flexibility was the point: the obligations of chapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding").

Other courts have determined that section 1325(b)(2) requires a forward-looking[1] determination of "projected disposable income." *E.g.*, *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006) (finding determination of debtor's "projected disposable income" must be based on debtor's anticipated income over term of plan). Additionally, some courts have taken a flexible approach to the forward-looking concept, holding that the calculation of "disposable income" is a starting point for determining "projected disposable income," and may be modified upon sufficient evidence. *E.g.*, *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006) (holding testimony of debtor-wife, that debtor-husband had recently been hospitalized and incurred substantial medical bills, was insufficient to rebut presumption that debtors' "disposable income," as calculated based upon their actual income over six-month period preceding petition

---

[1]There is further split among the "forward-looking" courts as to whether Form B22C may be modified as to income only, expenses only, or both income and expenses upon a change of circumstances. *E.g.*, *In re Edmondson*, 363 B.R. 212, 219-20 (Bankr. D. N.M. 2007) ("In sum, the Court finds that in computing the 'projected disposable income' for an above-median income debtor, the income side of the equation begins with Form B22C and takes into account the debtor's actual income as reported on Schedule I, while the expense side of the equation is restricted by the applicable expenses reported on Form B22C.")

3

date, was fair projection of their budget in future).

In a well-reasoned opinion, the Bankruptcy Court for the Western District of Pennsylvania noted:

> Common sense dictates that the use of the word "projected" should be interpreted to mean what it is, i.e. a best guess as to what the future holds. In this instance, that best guess is applied to a debtor's "disposable income" as that term is defined in section 1325(b)(2).
>
> In the context of section 1325(b)(1)(B), the term "projected disposable income" has as a component an estimate of the future. By its nature then, this best guess/estimate must have some measure of flexibility to it. This flexibility is in keeping with the underlying purpose of the Bankruptcy Code of providing a debtor with a fresh start. Absent such flexibility, if a court is required to look only at a debtor's historical data, a debtor may encounter feasibility issues with a plan where, for example, changes to income (and/or expenses) occur at or near the time of filing (or thereafter). Such flexibility also serves to maintain the balance sought by the BAPCPA amendments by allowing for consideration of many variables, including any increase in a debtor's income to the benefit of the unsecured creditor.

*In re May*, 381 B.R. 498, 506-07 (Bankr. W.D. Pa. 2008) (citations omitted). *See also In re Slusher*, 359 B.R. 290, 298 (Bankr. D. Nev. 2007) (holding "in certain circumstances, such as when a debtor gains or loses a job or when he or she receives an increase or decrease in pay immediately before filing bankruptcy, Form B22C is less authoritative, and serves only as a starting point for an investigation that will include an examination of Schedules I & J").

Section 707(b)(2)(B), which is incorporated into section 1325(b), allows a debtor to rebut a presumption of abuse in filing a chapter 7 petition where the debtor can demonstrate "special circumstances. . . that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative" The *May* court went on to conclude that, in the chapter 13 context, a rebuttable presumption inherently arose using the figures set forth in Form B22C as a starting point. *May*, 381 B.R. at 507. Thereafter, either the debtors, creditors or trustee could

4

show that particular figures reflected on the form were not accurate in the context of plan confirmation and request that the court deviate from the calculation prescribed. *Id*. In such cases, the burden of proof on the objecting party is to make a showing by a preponderance of the evidence that the calculation of "projected disposable income" on Form B22C does not realistically reflect a best guess/estimate of the debtors' anticipated future disposable income. This methodology has been employed by other courts, as well. *See In re Briscoe*, 374 B.R. 1, 19 (Bankr. D. D.C. 2007); *In re Watson*, 366 B.R. 523, 531-532 (Bankr. D. Md. 2007); *In re Jass*, 340 B.R. 411, 418-19 (Bankr. D. Utah 2006).

The Tenth Circuit Bankruptcy Appellate Panel was faced with a similar issue in *In re Lanning*, 380 B.R. 17 (B.A.P. 10th Cir. 2007). The chapter 13 trustee opposed confirmation of a plan proposed by an above-median income debtor who, during the six-month period prior to filing her petition, received a buy-out from her employer. This temporary increase in her monthly income was subsequently followed by termination of her employment. The bankruptcy court overruled the objection to confirmation. The appellate panel affirmed and concluded that when determining "projected disposable income," Form B22C disposable income is only the starting point. Thereafter, the trustee, creditors, or the debtor should be allowed the opportunity to offer rebutting evidence of changed income circumstances similar to that required by section 707(b)(2)(B)(ii) in support of their claim for deviation from the Form B22C determination. *Id*. at 24-25.

In *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006), the "disposable income" derived from the debtors' Form B22C was much higher than the amount of money committed to unsecured creditors in the proposed plan. When the trustee objected to confirmation, the debtors argued

5

that, because of their medical conditions, their future expenses and income were not accurately reflected in their Form B22C and their "projected disposable income" should be measured differently (and more realistically). *Id*. at 413. In order to give meaning and import to the word "projected," the court concluded that the language of section 1325(b)(1)(B) means that "the number resulting from Form B22C is a starting point for the Court's inquiry only. ... The significance of the word 'projected' is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B)." *Id*. at 415-16. Therefore, the deciding court should presume that the number resulting from Form B22C is the debtor's "projected disposable income" unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future. *Id*. at 418. The *Jass* court cautioned, however, that "[a]s a general rule, Debtors should not expect the bottom line determined from Schedules I and J to trump the calculations of a properly completed Form B22C." *Id*. at 419. In fact, the testimony of the debtor-wife regarding the debtor-husband's recent hospitalization and medical bills was insufficient to rebut the presumption that the debtors' "disposable income," as calculated by their actual income over a six-month period preceding the petition date, was a fair projection of their budget in the future. *Id*. at 419.

Although the trustee opposed confirmation in this case, this flexible approach may be utilized in other cases to the benefit of unsecured creditors. In *Matter of Liverman*, 383 B.R. 604 (Bankr. D. N.J. 2008), the court determined that the debtors' "disposable income," based upon the historical average of what the debtors had earned over the six months immediately preceding their petition date, when the debtor-husband was generally unemployed, was merely a starting

6

point in determining the "projected disposable income" that the debtors would have to devote to payment of unsecured creditors. Because the figures in Form B22C were not an accurate predictor of what the debtors could afford to pay, the "projected disposable income" that the debtors were required to devote to payment of their unsecured creditors had to be calculated based upon their higher income projections set forth in their schedules. *Id*. at 610-11.

A contrary position has recently been taken by the bankruptcy court in *In re Greer*, 388 B.R. 889 (Bankr. C.D. Ill. 2008). In that chapter 13 case, the debtor-wife lost her job postpetition, but before a plan was confirmed. The trustee opposed confirmation of the debtors' amended plan which proposed a reduced payment in conjunction with their postpetition reduction in income. The bankruptcy court sustained the trustee's objection. While recognizing that the pre-BAPCPA methodology for determining disposable income was better and permitted the use of the most current information, the court concluded that to retain judicial discretion is to disregard the Code's definition of "current monthly income." *Id*. at 892-94. The court explained:

> [I]t is inconceivable that Congress created the new term CMI and redefined "disposable income" by reference to it, but left the modifier "projected" in place so as to enable courts to ignore the CMI calculation whenever they didn't like the result. Full effect must be given to the drastic change implemented through the new CMI concept rather than allowing it to be nullified by attributing an overriding contrary intent to a preexisting modifier.

*Id*. at 895. The court's proposed solution to an unanticipated postpetition adverse change to the debtors' income was dismissal of the case, followed by refiling at a more advantageous time. *Id*. at 895-96.

The Ninth Circuit Court of Appeals has also adopted the narrow interpretation of section

1325(b). In *In re Kagenveama*, 541 F.3d 868 (9th Cir. 2008), the appellate court held that "the most natural reading" of "projected disposable income" as referenced in section 1325(b)(1)(B) is "disposable income" as defined in section 1325(b)(2), projected over the applicable commitment period. *Id*. at 872. *Kagenveama* specifically rejected *Hardacre*, 338 B.R. 718, stating that "projected" modifies "disposable income," and that "disposable income" and "projected disposable income" are directly linked concepts. *Id*. at 874. Likewise, criticizing the ruling in *Jass*, 340 B.R. 411, the court stated that nowhere in section 1325 is there language that would implicate or create the establishment of a "presumption" concerning disposable income. The court noted that the existence of section 707(b)'s presumption of abuse demonstrates that Congress knows how to create a presumption and did not do so in connection with disposable income. *Id*. at 874-75.

Although only a relatively recent case, the holding in *Kagenveama* has come under scrutiny. The bankruptcy court in *In re DeThample*, 390 B.R. 716 (Bankr. D. Kan. 2008), while recognizing the unique factual background of the *Kagenveama* case,[2] noted the ruling's

---

[2]The *DeThample* court contextualized the factual background faced by the appellate court as follows:
> The factual setting of *Kagenveama* may have some bearing on the weight to be given its holdings. The debtor's Form B22C expenses were greater than her CMI, yielding a negative disposable income figure. Nevertheless, this above-median debtor proposed a plan with a thirty-six month duration, paying $1,000 per month to the unsecured creditors. The chapter 13 trustee objected, asserting that the applicable commitment period was properly 60 months, not 36. The bankruptcy court overruled the trustee's objection, stating that debtor was not required to propose a 60-month plan because she had no projected disposable income. This lower court ruling the Ninth Circuit affirmed, suggesting that *Kagenveama* may be about applicable commitment periods as much as it is about projected disposable income. In the Ninth Circuit, a debtor with no projected disposable income has no applicable commitment period.

*DeThample*, 390 B.R. at 724.

8

Case 08-25440-mdm    Doc 21    Filed 10/15/08    Page 8 of 15

shortcomings:

> [T]he Ninth Circuit's *Kagenveama* opinion only looks within the confines of § 1325(b) for its analysis and nowhere acknowledges the inherent contradiction between "projecting" disposable income "to be received in the applicable commitment period" and using the backward-looking "current monthly income" figure as a starting point. It also ignores the prefatory language in § 1325(b)(1) that requires these calculations be made "as of the effective date of the plan" as opposed to determining what was received during the six-month period before the case was filed, as the definitions of CMI and disposable income contemplate. *Lanning* [380 B.R. 17 (B.A.P. 10th Cir. 2007)] recognizes these contradictions and attempts to resolve them in a manner that not only gives all of these terms meaning, but also results in above-median debtors being required to pay what they actually can pay or being allowed to not pay what they cannot. This is entirely consistent with the policy and legislative history of BAPCPA as well as the policy of the 1978 Act.

*DeThample*, 390 B.R. at 724-25 (citations omitted).

The cases cited above demonstrate that different courts can apply rigorous analytical principles with intellectual honesty and nevertheless arrive at diametrically opposite conclusions. While some courts focus solely on interpretation of certain statutes without regard to consequences (the "mechanical test"), other courts overlay context and stated Congressional policy, thereby making an attempt to harmonize the bankruptcy statutes as a whole, and policy as well. As was discussed in *Liverman*, 383 B.R. at 613, neither focus represents a particularly "activist" judicial approach, as that term has been pejoratively used of late. Both the mechanical and overall approaches represent attempts to interpret a challenging statute and to follow the law as Congress has told us to do.

In much the same sense that the oath given to witnesses directs them to tell "the truth," and in addition to that, "the whole truth," I believe a portion of a statute might make grammatical sense in isolation, but that interpretation is misleading when taken in context with other applicable code provisions. This is the problem with a mechanical reading of 11 U.S.C. §

9

1325(b). In this instance, a "plain meaning" analysis fails us, as there are contradictory provisions that are equally applicable to the instant fact situation.

Courts analyzing 11 U.S.C. § 1325(b) as it applies to above-median income debtors have generally been facing one of four possible conundrums: (1) the debtor's *expenses* have gone down since CMI was calculated or actual expenses are less than IRS standards allow, leaving the debtor with more money at the end of the month than the means test would require to be paid into the plan; (2) the debtor's *expenses* exceed IRS allowances or have gone up since CMI was calculated, leaving the debtor with insufficient amounts to fund the plan; (3) the debtor's *income* has gone up since CMI was calculated, again providing the debtor with excess funds; or (4) the debtor's *income* has gone down since CMI was calculated, so the debtor cannot pay what the means test requires. A combination of the above may apply.

Changes in expenses or income after confirmation are less of a problem for courts considering confirmation of an amended plan than those described above. These can be dealt with a modification after confirmation under 11 U.S.C. § 1329. Section 1325(b) and its incorporated means test does not apply to modifications; thus, a review of the debtor's circumstances at the time of the modification allows the court to assess the debtor's ability to pay going forward, as opposed to applying a set amount based on the six month period prior to bankruptcy. Although 11 U.S.C. § 1329 does not mandate a change in the debtor's circumstances to modify a plan, many courts have added this requirement.[3] A modification, of

---

[3] Some courts have required an unanticipated, substantial change to occur before permitting such plan modification. *See In re Hoggle*, 12 F.3d 1008, 1011 (11th Cir. 1994) ("Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation."); *In re Furgeson*, 263 B.R. 28, 37-38 (Bankr. N.D.N.Y. 2001) (citing cases supporting this view). A growing number of courts, however, do

course, assumes a debtor can get a plan confirmed in the first instance. Unfortunately, that is not what we are dealing with here.

Of the four changes in the debtor's circumstances around the time of filing described above, the first situation allows debtors to propose a plan consistent with their "disposable income" multiplied by the applicable commitment period, leaving them with excess income not required to be paid into the plan. *See, e.g., In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006). While this appears bizarre in light of Congress' and the President's statements that bankruptcy debtors pay their debts to the extent possible, *Id*. at 645-46, section 1325(b)(3) unambiguously provides that IRS allowances are to be used to calculate the expenses of above-median income debtors. It is not totally inconsistent with the equally clear policy of similar treatment for debtors who were similarly situated at some point, i.e., six months before filing. It is also a bright line treatment that takes a judge out of the equation. A debtor in such a situation could confirm a plan.

The second situation, where the debtor's expenses exceed the IRS allowances or have increased before confirmation, is dealt with by section 1325(b)(3). That section provides that for the above median income debtor, "[a]mounts reasonably necessary to be expended under

---

not require such a change. *See*, *e.g.*, *Barbosa v. Soloman*, 235 F.3d 31, 41 (1st Cir. 2000) ("refrain[ing] from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329"); *In re Witkowski*, 16 F.3d 739, 742 (7th Cir. 1994) (emphasizing that, "[b]y its terms, § 1329 does not provide for any threshold requirement to modify a bankruptcy plan"); *In re Sutton*, 303 B.R. 510, 516 (Bankr. S.D. Ala. 2003) (citing *Witkowski* for the proposition that § 1329's plain language imposes no substantial change requirement); *In re Sounakhene*, 249 B.R. 801, 803 (Bankr. S.D. Cal. 2000) ("A showing of substantially changed circumstances is not a prerequisite to plan modification."); *In re Phelps*, 149 B.R. 534, 538 (Bankr. N.D. Ill. 1993) (noting "Congress specifically provided for a change in circumstances test under other provisions of the Bankruptcy Code, including at least one in Chapter 13").

11

paragraph (2) ... shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." Section 707(b)(2) allows a debtor to deduct additional expenses over the IRS guidelines under "special circumstances" if the debtor can justify these additional expenses for which there is no reasonable alternative and can document them. 11 U.S.C. § 707(b)(2)(B). Accordingly, a debtor whose expenses exceed the rigid standard may still be able to confirm a plan.

In the third scenario, the debtor has more income after filing than CMI discloses. This might well be a common occurrence since a loss of income for six months would precipitate a bankruptcy for many people. A new job after a period of unemployment might not be enough to avoid the lingering consequences of the drop in income, and bankruptcy protection is necessary. However, it would mean that the CMI does not comport with the debtor's ability to make payments going forward. Applying the mechanical test, a court might decide that CMI ends the consideration of how much is needed to fund the plan, and the debtor can keep the excess. *See In re Mancl*, 381 B.R. 537 (W.D. Wis. 2008). On the other hand, a court that is not persuaded the mechanical test is appropriate could analyze CMI as being the starting point in determining how much is needed to fund the plan. As was described more fully above, such courts that have found that terms like "as of the effective date of the plan," "projected disposable income," and "to be expended" mean that CMI is a "starting point." If there is a clear disconnect between CMI and the debtor's ability to fund a plan, the court will analyze the debtor's circumstances on a forward-looking basis rather than using solely historical facts. *See., e.g., In re Liverman*, 383 B.R. 604 (Bankr. D. N.J. 2008). Applying either interpretation, a debtor in such a situation could confirm a plan.

The fourth scenario is the one providing no chapter 13 relief whatsoever under the mechanical approach, and it is the one we have here. The debtor experienced a drop in income around the time of filing because benefits to which he was entitled before filing ended. This made his CMI deceptively high, as there was no way it could be duplicated going forward. This situation is all too common, as the very event that forces people into bankruptcy is a drop in income. *See, e.g., In re Louviere*, 389 B.R. 502 (Bankr. E.D. Tex. 2008) (debtor retired in month immediately preceding petition date); *In re May*, 381 B.R. 498 (Bankr. W.D. Pa. 2008) (decreased income and additional expenses arose shortly after filing). It also applies to people who have withdrawn money from a 401k plan in a failed attempt to forestall the bankruptcy, and that withdrawal is counted in CMI. *See In re DeThample*, 390 B.R. 716 (Bankr. D. Kan. 2008) (discussing cases where a one-time withdrawal from a 401k plan or IRA was or was not included in CMI). Applying the mechanical test to "projected disposable income," there is no way such a person could be a debtor in a chapter 13 case. Any plan would be beyond the debtor's ability to pay, causing it to fail the feasibility test of 11 U.S.C. § 1325(a)(6). Inability to have an initial plan confirmed prevents the debtor from modifying after confirmation using the standards under 11 U.S.C. § 1329. Why someone forced into bankruptcy by a loss of income should be totally shut out of the system is a mystery to me, but it is the result of the mechanical interpretation of 11 U.S.C. § 1325(b). *See In re Greer*, 388 B.R. 889 (Bankr. C.D. Ill. 2008). The *Greer* court notes that terms such as "as of the effective date of the plan" and "projected" as a modifier of the defined term "disposable income" predated BAPCPA and the changes that rigidly quantified plan requirements. I am not persuaded this makes them less important than the new requirements, as Congress is equally able to subtract words from a statute as it is to add them. Furthermore, that

court's suggestion that dismissal and refiling when an extended period of low income makes it possible to propose a confirmable plan smacks of gaming the system. Debtors should not be encouraged to file a case with a hopelessly high CMI, take advantage of the automatic stay until the case is dismissed, and hope to put off a foreclosure until CMI is manageable. Such a debtor might well face a good faith challenge later under 11 U.S.C. § 362(c)(3) or (4) when attempting to extend or reimpose the stay.

As was noted above, 11 U.S.C. § 1325(b)(3) provides for adjustment of expenses by reference to 11 U.S.C. § 707(b)(2), but it provides no similar adjustment for changes in income. However, this section means that the IRS allowances must be used, rather than actual expenses, and the incorporated section provides for special circumstances and documentation of unusual expenses. It does not mean a debtor can have a plan confirmed if expenses make CMI unrealistic, but not if a change in income makes CMI unrealistic.

I believe the better reasoned view is that held by a majority of courts that have had to face the issue of an increase or decrease in a debtor's income that renders "disposable income," as that term is defined in 11 U.S.C. § 1325(b)(2), meaningless in light of the forward-looking necessity of plan confirmation and performance. This gives meaning to the entirety of 11 U.S.C. § 1325, not just subsection 1325(b)(1) and (2), if "projected disposable income" is interpreted to require a showing as to why the amount to be paid to unsecured creditors under the means test is no longer reasonable. *See, e.g., In re DeThample*, 390 B.R. 716 (Bankr. D. Kan. 2008*); In re Louviere*, 389 B.R. 502 (Bankr. E.D. Tex. 2008). True, the statute does not speak in terms of a presumption, but it does not need to. As was noted by the court in *Slusher*, and cited in *Liverman*, this is not the only way to interpret the statute, but I believe it is the "least flawed,"

14

and it allows honest but unfortunate debtors the chance to pay creditors to the greatest extent possible, regardless of whether their income goes up or down before or after filing or confirmation. It provides that debtors will pay according to plans to the greatest extent possible consistent with their ability to do so, and it allows them to retain their houses, cars, and other property needed for a fresh start.

Accordingly, the trustee's objection to confirmation is overruled, and the plan will be confirmed. The trustee will prepare the order of confirmation.

October 15, 2008

                                        Margaret Dee McGarity
                                        Chief Judge, U.S. Bankruptcy Court